UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PHYLLIS MCQUEEN, )<br>    *Plaintiff*, )<br>)<br>    *vs.* )<br>)<br>MICHAEL ASTRUE, )<br>COMMISSIONER OF THE SOCIAL SECURITY )<br>ADMINISTRATION, )<br>)<br>    *Defendant.* ) | 1:11-cv-01117-JMS-MJD |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Phyllis McQueen applied for disability and disability insurance benefits from the Social Security Administration on August 27, 2007.  After a series of administrative proceedings and appeals, including a hearing in November 2009 before Administrative Law Judge ("ALJ") Tammy Whitaker, the ALJ issued a finding on February 25, 2010 that Ms. McQueen was not entitled to disability benefits.  In June 2011, the Appeals Council denied Ms. McQueen's timely request for review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review.  20 C.F.R. § 404.981.  Ms. McQueen then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial.

**I.**
**RELEVANT BACKGROUND**

Ms. McQueen was fifty-two years old at the time of her disability application on August 27, 2007. [Dkt. 14-2 at 16, 32.]  She has a ninth grade education and worked up until 1999 primarily as a department manager at WalMart and then until March 2005 helping out with bookkeeping duties at a bar. [*Id.* at 33-34.]  Ms. McQueen claims she is disabled because of the

effects of chronic obstructive pulmonary disease, chronic bronchitis, sleep apnea, heel spurs, and asthma. [Dkt. 14-6 at 6.] She also testified at the November 30, 2009 hearing that she has suffered from obesity, shortness of breath, shoulder problems, panic attacks, and depression. [Dkt. 14-2 at 35-36, 39, 41-42.] She was last insured for purposes of disability on March 31, 2005. [*Id.* at 18.]

There is no documentation of treatment for any conditions during 2005, but Ms. McQueen did receive treatment for a back injury in 1994, for shortness of breath and frequent bouts with bronchitis beginning in 2007, and for back and leg pain in 2008. [Dkts. 14-7 at 10-14, 20-23, 47-51; 14-8 at 12-29, 37-38, 60; 14-11 at 45-46, 48.] As to records for treatment surrounding the March 2005 period, Ms. McQueen claims that all of her medical records from 2000 to 2006 have been lost. [Dkt. 14-2 at 31.] In October and December 2007, two state agency physicians reviewed Ms. McQueen's medical records and both found that there was insufficient evidence to determine whether she had a severe impairment prior to the date of last insured on March 31, 2005. [Dkt. 14-7 at 57, 62.]

Additional facts will be provided as necessary to review Ms. McQueen's denial of benefits.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this

Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

### III.
### THE ALJ'S DECISION

Using the five-step sequential evaluation set forth by the Social Security Administration, the ALJ determined that Ms. McQueen was not disabled.

At step one of the analysis, the ALJ found that Ms. McQueen had not engaged in substantial gainful activity[1] since the alleged onset date of her disability. [Dkt. 14-2 at 18.][2]

At step two, the ALJ identified two "medically determinable impairments" – lumbar scoliosis and obesity – but found that neither was a "severe impairment." [*Id.* at 18-23.] Specifically, the ALJ found that although Ms. McQueen alleged disabling chronic obstructive pulmonary disease, bronchitis, asthma, sleep apnea, shoulder problems, fibromyalgia, anxiety, depression, and heel spurs prior to March 31, 2005, the record did not support the conclusion that those impairments existed and/or were disabling. [*Id.* at 19.] And while the ALJ found that Ms. McQueen suffered from lumbar scoliosis and obesity, she found that the record indicated only mild scoliosis that she could not conclude would cause limitations in Ms. McQueen's basic work activities, and that Ms. McQueen's level of obesity could not be found to be severe given the lack of medical evidence of any musculoskeletal, respiratory, or cardiovascular impairment during the relevant time period. [*Id.* at 21-22.] Based on these findings, the ALJ concluded that Ms. McQueen was not disabled.

## IV.
### DISCUSSION

Ms. McQueen challenges the ALJ's decision for one reason, arguing that the ALJ erred by failing to infer the onset date of Ms. McQueen's lumbar scoliosis and obesity under SSR 83-20.

---

[1] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

[2] While Ms. McQueen initially claimed in her Disability Report that the onset date of her disability was March 31, 2005, [dkt. 14-6 at 6], which is also the date she was last insured, [dkt. 14-2 at 18], she later testified at the November 30, 2009 hearing that she was disabled in 1999, [*id.* at 38]. The ALJ gave Ms. McQueen the benefit of the doubt and used an alleged onset date of 1999 based on her testimony. [*Id.* at 18.]

### A.  Step Two Challenge

*1.  Application of SSR 83-20*

Specifically, Ms. McQueen argues that her lack of medical evidence from 2000 to 2006 should not be fatal to her application for disability insurance benefits, and that because the ALJ allegedly found she suffered from the severe impairments of lumbar scoliosis and obesity, and she still suffers from those conditions, the ALJ should have inferred the onset date for those impairments.  Ms. McQueen relies upon SSR 83-20, which provides that:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

1983 SSR LEXIS 25, *6-7.

SSR 83-20 only applies when an administrative law judge has already found that an individual is disabled as of the application date, and the issue of whether the disability arose at an earlier time remains.  *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).  Once it finds that there is no severe impairment, there is no "onset date" for the ALJ to determine and the ALJ's inquiry properly ends.  *Guranovich v. Astrue*, 465 Fed. Appx. 541, 544 (7th Cir. 2012); *Wolms v. Barnhart*, 71 Fed. Appx., 579, 581 (7th Cir. 2003) ("[W]here, as here, there is no finding of disability under step two, SSR 83-20 is inapplicable").

Ms. McQueen's argument that the ALJ should have applied SSR 83-20 to determine an onset date is flawed from the outset.  She argues that "the ALJ determine[d] that the claimant *does* have the severe impairment[s] of lumbar scoliosis and obesity," [dkt. 30 at 5 (emphasis

added)], and should have then continued to determine the onset date of those impairments pursuant to SSR 83-20. However, the ALJ did not make the finding that Ms. McQueen's impairments were severe. Instead, the ALJ specifically stated:

> In sum, the claimant's physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities during the relevant period. Thus, the claimant *does not have a severe impairment or combination of impairments* during the relevant period or through her date last insured.

[Dkt. 14-2 at 23 (emphasis added).] Accordingly, SSR 83-20 has no application here.

### 2. *"No Severe Impairment" Determination*

As discussed above, Ms. McQueen confuses the issues by incorrectly asserting that the ALJ found she suffered from the severe impairments of lumbar scoliosis and obesity. Having failed to recognize that the ALJ did not, in fact, make that determination, and accordingly failing to address the ALJ's true holding, Ms. McQueen has waived the argument that the ALJ's finding of no severe impairment was an error. *Garmon v. Apfel*, 2000 U.S. App. LEXIS 5038, *12-13 (7th Cir. 2000).[3] In any event, however, the Court will briefly address the ALJ's finding that Ms. McQueen did not suffer from a severe impairment.[4]

Once the ALJ found that Ms. McQueen had the medically determinable impairments of lumbar scoliosis and obesity, it had to evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" to determine whether those symptoms "affect the individual's abil-

---

[3] The Court also notes that Ms. McQueen failed to file a reply brief, in which she could have addressed the Commissioner's argument that the ALJ did not find a severe impairment and, thus, SSR 83-20 did not apply. The failure to file a reply is a further waiver of the argument that the ALJ's finding of no severe impairment was incorrect. *Massey v. Ameriquest Mortg. Co.*, 2010 U.S. Dist. LEXIS 10386, *5 (S.D. Ind. 2010).

[4] The Court will only address the impairments of lumbar scoliosis and obesity, as Ms. McQueen does not mention her other claimed impairments in her Memorandum, [dkt. 30], and, accordingly, the Court assumes that she does not object to the ALJ's finding that those impairments either did not exist or were not disabling.

ity to do basic work activities." 1996 SSR LEXIS 4, *2. The claimant's credibility is to be considered in light of "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* at *3. It is not enough for a claimant to simply state that they experienced symptoms or discomfort – there must be some objective medical evidence to show severity. *Stuckey v. Sullivan*, 881 F.2d 506, 508-09 (7th Cir. 1989).

The ALJ considered the "nature, location, duration, frequency, and intensity of the claimant's symptoms," and first found that the only objective medical evidence regarding Ms. McQueen's lumbar scoliosis was a 1992 lumbar x-ray showing mild scoliosis. [Dkt. 14-2 at 21.] Because Ms. McQueen did not provide any evidence of treatment for a back impairment from 1999 through March 2005, the ALJ found that the impairment was not severe because it could not be found to cause limitations in her basic work activities. [*Id.*] As to Ms. McQueen's obesity, the ALJ found that there is no magic number in terms of weight or body mass index that mandates a finding of severe impairment based on obesity, but rather the proper consideration is how the obesity impacted the claimant's level of functionality. [*Id.* at 21-22.] The ALJ concluded that, because Ms. McQueen did not provide any evidence of "musculoskeletal, respiratory, or cardiovascular impairment during the relevant period," her obesity was not considered severe. [*Id.* at 22.] The ALJ went on to note the dearth of evidence regarding precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment and other measures (other than medication); and functional limitations. [*Id.*] She also considered opinions of Ms. McQueen's treating sources, finding that none indicated she was disabled during the rele-

vant period. [*Id.*] Finally, the ALJ found that Ms. McQueen's allegations of disabling pain, other symptoms, and functional limitations were not "entirely credible." [*Id.*]

The Court finds that the ALJ's determination that no severe impairment existed is supported by the evidence. There was little or no evidence regarding Ms. McQueen's lumbar scoliosis or obesity, or how those conditions may have affected her ability to work. Additionally, this Court will not disturb the ALJ's findings regarding Ms. McQueen's credibility absent a determination that the findings were "patently wrong in view of the cold record before us." *Imani on behalf of Hayes v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986). The record here simply does not support overturning the ALJ's decision.

## V.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Ms. McQueen does not qualify for disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

08/08/2012

*[signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

- 9 -

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Charles Julian Myers
cmyers7943@sbcglobal.net